**In re the Marriage of Virginia L. HODGES, Petitioner, Respondent,**

v.

**Richard F. HODGES, Appellant.**

**No. C8–87–478.**

Court of Appeals of Minnesota.

Nov. 10, 1987.

Michael A. Feist, Jerome D. Ciresi & Assoc., St. Paul, for respondent.

Richard W. Davis, Weinblatt and Davis, St. Paul, for appellant.

Heard, considered, and decided by POPOVICH, P.J., and LESLIE and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This is a modification of maintenance case. The parties were divorced in Indiana on December 27, 1971. Later, they separately moved to Minnesota. On August 26, 1986, respondent Virginia Hodges moved in Ramsey County District Court for an upward modification of maintenance, and served appellant Richard Hodges with an order to show cause.

Appellant appeared through his attorney to challenge jurisdiction and oppose respondent's motion on the merits. A referee concluded that Minnesota had jurisdiction to modify the Indiana judgment and decree, and that Minnesota substantive law applies. Accordingly, he increased maintenance from $500 to $1300 and awarded respondent attorney fees. Appellant unsuccessfully brought a Rule 53 appeal to a Ramsey County judge.

Richard Hodges appeals. We affirm on the issues of jurisdiction and attorney fees, but reverse and remand on the issue of maintenance, finding insufficient evidence to support the award.

## FACTS

The parties were divorced in Indiana in 1971, ending a 21 year marriage. They have three children, now all emancipated. Appellant remarried and moved to Minnesota in 1976. In 1977, respondent and two of the parties' three children moved to Minnesota.

The Indiana divorce decree incorporated the parties' stipulation to custody, child support, property division, and alimony in a document entitled, "Property Settlement Agreement." [1] The stipulation provided

---

**1.** The title of the stipulation was apparently typical of decrees issued in Indiana before 1973. The then-existing alimony statute provided that the alimony decree could be in a gross sum which could be payable in installments. (*White v. White,* 167 Ind.App. 459, 464, 338 N.E.2d 749, 752 (1975), *reh'g denied,* Feb. 17, 1976). Under Indiana law, the purpose of alimony was two fold: to provide a property settlement and an award for future support of the wife. Alimony

payments terminated on death or remarriage of the wife. *Id.* at 465, 338 N.E.2d at 753.

The Indiana statute effective at the time the parties were divorced provided:

The courts shall fix the amount of alimony and shall enter a judgment for such sum, and specify the character and method of payment, * * *. In determining the character of the payment of the alimony the court may require it to be paid in gross or in periodic payments,

that the "property settlement and alimony" amount was to be made in periodic payments of $500 per month, terminable on respondent's remarriage, and includable in respondent's gross income and deductible from appellant's gross income.

The Indiana statute in effect at that time did not allow modification of alimony, but did allow modification of property settlements.[2] This law was repealed in 1973. While the new Indiana statute, currently in force, allows modification of maintenance, it does not apply to decrees entered before 1973.

After the dissolution, respondent remained a homemaker, supporting herself and the children on the $500 per month alimony and $300 per month child support she received from appellant. The child support order was reduced by $100 as each child reached age 21. Additionally, under the terms of the decree, appellant, who then owned 25% interest in a car dealership, was required to provide respondent with a new car each year. By the time of the current modification motion, all of the children were emancipated and appellant paid no child support. Until now, the decree has not been modified.

Respondent's monthly income, at the time of her modification motion, was $587, comprised of $87 in social security and $500 maintenance. Prior to the marriage, respondent was employed in retail sales. During the marriage, appellant discouraged respondent from working outside the home. For a brief period of time after the dissolution, 1983–85, respondent was employed in her home sorting mail, earning about $300 per month. Due to heart ailments, she quit this employment on her doctors' advice. Letters from her doctors, submitted to the referee, tended to confirm

this. Respondent lives in a three bedroom, two bath mobile home. In his brief, appellant claims this trailer home is worth $30,000 to $35,000, however, no appraisal evidence of the trailer home's value was given by either party.

Appellant lives in a home which respondent claims is worth $400,000. Respondent also claims appellant owns a cabin cruiser, a speed boat, and several other boats. No appraisal evidence was offered to the court on the values of these items that appellant owns.

The referee concluded, based on a finding of changed circumstances, that alimony should be increased to $1300 per month. At the motion hearing, the referee first heard counsels' arguments on jurisdiction and on choice of laws. Respondent submitted a lengthy trial memorandum at the hearing. Although appellant refused to comply with respondent's request for production of documents, or to answer interrogatories, his attorney informed the court that he had some of the information available at the motion hearing. When appellant's attorney attempted to give the papers and some depositions to the referee at the end of the motion hearing, the referee advised him not to submit appellant's financial information until the referee determined whether Minnesota had jurisdiction over the matter.

At the beginning of the hearing, the referee told counsel to submit written memoranda on appellant's financial situation after the hearing:

> That way we submit it all except for what you want to send in. You wouldn't have to have another court hearing.

A district court judge approved the referee's findings. A different judge ap-

---

either equal or unequal, and if to be paid in periodic payments the court may further provide for their discontinuance or reduction upon the death or remarriage of the wife * * *. Such amount shall be awarded, regardless of the character or method of its payment and shall be in complete discharge of all the husband's obligation to the wife, but not to his minor children, arising out of the marital or family relationship.

Ind.Code § 31–1–12–17 (1971), Ind.Code Ann. § 3–1218 (Burns 1971).
This statute was repealed in 1973 by Acts 1973, P.L. 297, sec. 3. Alimony awards made prior to the 1973 enactment are not subject to modification under Indiana law. *Wilms v. Wilms*, 157 Ind.App. 583, 585–86, 301 N.E.2d 249, 250–51 (1973).

2. *Wilms v. Wilms*, 157 Ind.App. 583, 301 N.E.2d 249, 250 (Ind.App.1973).

proved the findings denying appellant's Rule 53 appeal.

## ISSUES

1. Did the referee properly determine Minnesota courts have jurisdiction to modify an Indiana divorce decree?

2. Was the referee's decision to modify maintenance supported by the evidence?

3. Did the referee properly award respondent attorney fees?

## ANALYSIS

### I.

*Standard of Review*

The standard of review of a referee's order is discussed in *Olson v. Olson,* 399 N.W.2d 660, 662 (Minn.Ct.App.1987), *see also Berg v. Berg,* 309 Minn. 281, 285, 244 N.W.2d 149, 151 (1976). This court, in *Olson,* stated:

> This court's scope of review * * * is rather narrow. The decision to modify [an] * * * order lies in the broad and sound discretion of the trial court, and an appellate court will reverse for an abuse of discretion only where it finds a "clearly erroneous conclusion that is against logic and the facts on record." *Rutten v. Rutten,* 347 N.W.2d 47, 50 (Minn. 1984).

*Olson,* 399 N.W.2d at 662.

*Full Faith and Credit*

Appellant argues that the referee's conclusion that Minnesota courts have jurisdiction is erroneous. He argues the Indiana decree is a final judgment, not subject to modification. Appellate courts need not defer to district courts when reviewing questions of law. *Durfee v. Rod Baxter*

*Imports, Inc.,* 262 N.W.2d 349, 354 (Minn. 1977); *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.,* 260 N.W.2d 579, 582 (Minn.1977). The referee concluded:

> This Court properly has jurisdiction over the parties and the subject matter and this Court gives full faith and credit to the parties' 1971 Indiana Decree of Dissolution.

 Appellant contends the referee did not give full faith and credit to Indiana law when he accepted jurisdiction to amend the decree. U.S. Const. art. IV, § 1. The full faith and credit clause requires recognition and enforcement by Minnesota of alimony installments accrued under an inalterable judgment for a specific amount rendered in Indiana.[3] *Rudolf v. Rudolf,* 348 N.W.2d 740 (Minn.1984), *citing Sistare v. Sistare,* 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1910). The judgment and decree are "final" for purposes of full faith and credit purposes, subject to the usual grounds for vacation of a money judgment. *Matson v. Matson,* 310 N.W.2d 502, 505 (Minn. 1981).

The issues are whether this state can modify the Indiana decree, and what full faith and credit means in the context of a modification motion. Appellant takes the position that full faith and credit means applying current Indiana law to the modification motion. In support of his argument, he cites *Haas v. Haas,* 282 Minn. 420, 165 N.W.2d 240 (1969) and *Holton v. Holton,* 153 Minn. 346, 190 N.W. 542 (1922). We do not agree that these cases apply.[4]

*Haas* involved an Idaho divorce decree which retained jurisdiction over child support. The husband later moved to Minnesota and the wife remarried. The wife

---

**3.** Full faith and credit requires Minnesota to recognize and enforce a foreign judgment and decree where both parties are Minnesota residents. *Rudolf v. Rudolf,* 348 N.W.2d 740 (Minn. 1984). *See* Uniform Enforcement of Foreign Judgments Act, Minn.Stat. § 548.33 (1986 & Supp.1987). Under a 1987 amendment to the Act, a certified copy of a foreign judgment may be filed with the district court administrator. "A judgment so filed has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of a district court or the supreme court of this state, and may be enforced or satisfied in the same manner." Minn.Stat. § 548.27 (Supp.1987).

**4.** *Matson* overrules the portions of *Haas* and *Holton* that authorize foreign judgment proceedings without notice to the defaulting party. In every other respect the opinions appear to be good law and are cited by *Matson* as controlling authority. *Matson,* 310 N.W.2d at 507, n. 8.

obtained a default judgment in Idaho against the husband for child support arrearages, and successfully moved to enforce the judgment in Minnesota. The *Haas* court treated enforcement of child support in the original decree as the enforcement of a foreign judgment, and held:

> U.S. Const. art. IV § 1, which provides that if a judgment is valid and conclusive in the state where it is rendered, it is so in all other states, and that the judgment is subject only to such pleas and defenses as would be permissible in the state where the judgment is rendered.

*Haas*, 282 Minn. at 422, 165 N.W.2d at 242 (citations omitted). *Haas* refers only to the enforcement of a foreign judgment, not to the modification of a foreign decree.

*Haas* relies on *Holton*, a case involving an order for alimony in an Oregon decree. After the decree was entered, the husband moved to Minnesota. The wife successfully sought a judgment for arrearages in Oregon, and moved to enforce the judgment in Minnesota. The Minnesota Supreme Court held that the wife was entitled to recover the total amount of unpaid installments.

Neither *Haas* nor *Holton* control here. Instead, both involve enforcement of original decrees and do not address whether a sister state can modify the provisions of a foreign judgment and decree. In both cases, the supreme court held that the original decree was final as to unpaid installments accrued when the action was commenced. *Haas*, 282 Minn. at 423, 165 N.W. 2d at 242; *Holton*, 153 Minn. at 351, 190 N.W. at 544. Neither case extended this holding to modifications. *Id.* Nor did respondent raise "pleas and defenses" to the original Indiana decree. Thus *Haas* and *Holton* are not controlling on the jurisdictional question raised by appellant.

■ We find the case of *Rudolf v. Rudolf,* 348 N.W.2d 740 (Minn.1984) dispositive of both the full faith and credit and choice of laws issues raised on this appeal. In *Rudolf,* the Minnesota Supreme Court held the full faith and credit clause did not prevent Minnesota from modifying the terms of a foreign divorce decree. The supreme court stated:

> [F]ull faith and credit does not preclude Minnesota from considering petitioner-appellant's ongoing alimony obligation, where a substantial change of circumstances has been alleged, where one of the parties is a Minnesota resident, and where neither party has resided in or had significant contact with * * * the rendering state, in the nearly 20 years since the decree was issued.

*Id.* 348 N.W.2d at 743.

The Rudolfs were domiciled in New Jersey, but in 1965 appellant John Rudolf established Nevada residency to petition for a Nevada dissolution decree. Later both parties moved to Minnesota. Once in Minnesota, they stipulated to amend custody and child support. They also stipulated to Minnesota jurisdiction, and agreed to incorporate the stipulation into the decree. However, the decree was never modified to incorporate the stipulation. In 1975 appellant moved to California. In 1981 he moved the Hennepin County court to terminate his alimony obligation. *Id.* at 741.

The Minnesota district court modified the Nevada decree, terminating maintenance and forgiving arrearages. Respondent Dolores Rudolf unsuccessfully moved to set the findings aside. She was never served with a copy of the court's order. Several months later, she again moved to set aside the district court's order terminating alimony, arguing that Nevada law controlled and that, under Nevada law, the alimony award was final and nonmodifiable. The district court reversed itself, modified the decree, and entered judgment for arrearages.

John Rudolf appealed, and the supreme court reversed and remanded. The supreme court held that it need not give full faith and credit to Nevada laws against prospective modification of alimony. *Id.* at 742–43. The court held that the jurisdictional limitation in the decree, prohibiting modification only if the court expressly retains jurisdiction, binds only Nevada courts. Moreover, Nevada law, at the time of the decree, acknowledged the right of a foreign state to modify, applying its own

laws, should the obligor change his residence to another state. *Id.* at 743. In *Rudolf*, the obligor resided in California, which allows prospective modification of maintenance on a showing of changed circumstances. *Id.*

The supreme court relied on case law from other jurisdictions which allow modification of alimony "in the face of a sister state's valid decree to the contrary:"

> [A]lteration of conditions warranting modification of a decree for alimony or maintenance produces factual issues for adjudication which were non-existent when the decree was made, and which have never been adjudged.

*Rudolf*, 348 N.W.2d at 743 (citations omitted). In addition, the Minnesota Supreme Court cited *Thompson v. Thompson*, 645 S.W.2d 79 (Mo.App.1982), where a Kansas court held the Kansas decree for child support was not binding because all relevant parties subsequently became Missouri residents. *Rudolf*, 348 N.W.2d at 743.

Although one state must recognize the validity of a decree entered in another state, Minnesota need not give full faith and credit to prior Indiana law as applied to modification of maintenance, under *Rudolf. Id.*, 348 N.W.2d at 743.

The parties have, for approximately eleven years, lived outside Indiana, the rendering state. We consider that length of absence from the rendering state to be sufficient to bring this case within the holding and intent of *Rudolf*.[5]

Once jurisdiction attaches, we must determine whether to apply Minnesota's or Indiana's substantive law on maintenance modification. *Rudolf*, 348 N.W.2d at 743. While Minnesota's law allows for modification of maintenance, Indiana's law does not allow modification of alimony provisions in decrees entered before 1973.

■ To determine what law governs, Minnesota may apply its own choice of law rules. *Schwartz v. Consolidated Freightways Corp. of Delaware*, 300 Minn. 487,

492, 221 N.W.2d 665, 668 (1974). Minnesota follows Professor Leflar's "better rule of law" concept to determine what law governs. *Milkovich v. Saari*, 295 Minn. 155, 164, 203 N.W.2d 408, 413 (1973), *citing Schneider v. Nichols*, 280 Minn. 139, 158 N.W.2d 254 (1968) (adopting the "better-law" concept). *See Milkovich*, 295 Minn. at 164, 203 N.W.2d at 414 citing *Conflicts Law: More on Choice–Influencing Considerations*, 54 Calif.L.Rev. 1584. *See also Schwartz*, 300 Minn. 487, 221 N.W.2d 665.

Minnesota has adopted a five factor analysis for conflict of substantive law matters:

> (a) predictability of results; (b) maintenance of interstate and international order; (c) simplification of the judicial task: (d) advancement of the forum's governmental interests; and (e) application of the better rule of law. [*Milkovich*], 295 Minn. at 161, 203 N.W.2d at 412.

*Davis v. Furlong*, 328 N.W.2d 150, 152 (Minn.1983).

■ Here, the first three factors are easily disposed of. Although appellant argues Indiana law should control, he advances no other rationale than that Indiana was the state rendering the judgment and decree. Where both parties live in Minnesota, and have not lived in Indiana for some time, the parties are subject to Minnesota laws in all other areas, and it is reasonable to examine modification of the decree under Minnesota law as well. *See Rudolf*, 348 N.W.2d at 743. All of the changed circumstances that have been alleged in respondent's motion occurred in Minnesota.

Second, maintenance of interstate order, requires "no more * * * than that the court apply the law of no state which does not have substantial connection with the total facts and the particular issue being litigated." *Milkovich*, 295 Minn. at 161, 203 N.W.2d at 412. Third, "simplification of the judicial task, poses no problem since the courts are fully capable of administer-

---

5. Minnesota courts have personal jurisdiction over both parties, Minn.Stat. § 484.01 (1986), and subject matter jurisdiction over the modification, Minn.Stat. § 518.09 (1986). Since the parties are both Minnesota residents, venue is properly in Ramsey County where respondent resides. Minn.Stat. § 518.06 (1986).

ing the law of another forum if called upon to do so." *Id.*

We believe that the fourth factor, advancement of the forum state's governmental interest, is determinative. Throughout his brief, appellant's principal argument against increasing maintenance is respondent alleged qualification for a number of public assistance programs available to assist her financially, possibly including social security disability, Section 8 rental assistance and housing, heat share, and medicaid. Minnesota has a governmental interest in keeping individuals off of government assistance, if equitably possible. Here, respondent alleges appellant has had a substantial increase in income, and alleges that her financial situation is deteriorating.

Appellant also argues that respondent should sell her trailer home and live off the proceeds. Respondent argues that this would make her almost totally dependent on Minnesota's welfare system. Minnesota has an interest in preventing this result. For these reasons, we hold that the better rule of law concept dictates application of Minnesota's law to respondent's modification of maintenance motion.

We conclude, therefore, that the referee properly determined that Minnesota courts have jurisdiction over the parties, and authority to apply Minnesota law when considering whether to modify the maintenance award.

## II.

### Maintenance Modification

■ Appellant argues the referee set up a bifurcated procedure and failed to abide by it. He claims the referee said it was going to conduct separate evidentiary hearings on jurisdiction and modification of maintenance. Appellant's claim is not substantially supported by the record. The referee stated that, following the hearing, he would first determine whether Minnesota could exercise jurisdiction. If he determined Minnesota had jurisdiction, he advised the parties he would notify them to submit documentary evidence on their financial circumstances.

However, the referee did not call for the documentary evidence, but issued his findings, conclusions, and order based on a limited amount of evidence submitted prior to and at the hearing. Appellant argues the referee made his decisions without considering all his evidence, including four depositions which the referee refused to accept.

Appellant also claims that he was denied notice and opportunity to be heard. He argues he was entitled to an evidentiary hearing, and that the court's failure to allow him to do so denied him due process. This argument is contrary to Ramsey County's court rules, which state:

All Motions, except for custody or contempt proceedings or Motions to vacate a Judgment and Decree, shall be submitted on Affidavits and argument of counsel unless otherwise ordered by the Court, in its discretion, upon good cause shown.

Requests for hearing time in excess of one-half hour shall be assigned for hearing upon the Special Term Calendar of the Referees, and shall be submitted by written petition specifically setting forth the necessity and reason that evidence cannot be submitted by affidavit. The petition shall include names of witnesses, nature and length of testimony, including cross examination, and types of exhibits, if any. The hearing shall be utilized as a pre-trial conference if the petition is granted.

Second Judicial District, Family Court Rules, Rule 17 (1.07). Appellant did not request an evidentiary hearing.

■ However, we find the referee's decision to modify maintenance is not supported by the evidence. At the motion hearing, both parties made uncorroborated assertions about the valuation of each other's property and income. We remand this matter for the referee to receive additional evidence on these issues. Without evidence, the referee cannot make findings to support a modification of maintenance.

Appellant argues that, under Minnesota law, respondent is not entitled to a mainte-

nance increase. The referee made findings on the parties' needs and financial circumstances, but his findings were not supported by the limited evidence presented. We remand for reconsideration of the maintenance award, in light of what additional evidence the parties may present, to be considered under the statutory factors for maintenance modification.

Respondent argues the referee did not need specific figures to make his decisions. We do not agree. Under *Moylan v. Moylan*, 384 N.W.2d 859, 863–4 (Minn.1986), and subsequent cases, findings are necessary to enable meaningful appellate review. The parties' uncorroborated assertions of each other's financial situation are insufficient. The referee, on remand, should take evidence and make such findings.

### III.

*Attorney Fees*

█ The trial court awarded respondent attorney fees. Appellant claims this was error. He claims Virginia Hodges did not present bills or affidavits justifying the $3500 fee award. Virginia Hodges' attorney submitted an affidavit to the referee to support the award. Under Minn.Stat. § 518.14 (1986), a district court may award a party a reasonable amount of attorney fees to enable the party to carry on or protest the proceeding. The amount of attorney fees to be awarded rests almost entirely in the discretion of the trial court. *Bollenbach v. Bollenbach*, 285 Minn. 418, 440, 175 N.W.2d 148, 162 (1970). On this record, we find no abuse of discretion.

### DECISION

The trial court properly found that Minnesota courts had jurisdiction to modify this foreign judgment and decree, and that Minnesota law applies to the issue of modification. However, the court's conclusion that an increase in maintenance was proper was not supported by the evidence. We remand the maintenance issue for receipt of additional evidence. The trial court properly awarded respondent attorney fees.

Affirmed in part, reversed in part and remanded.